# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| FRANCES XAVIER LETARD, JR., ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GENERAL AMERICAN LIFE INSURANCE ) <br> COMPANY, ) <br>     Defendant. ) | No. 3:05-CV-25 <br> (Phillips) |

## MEMORANDUM OPINION

This is an insurance coverage case regarding the lapse of three General American individual disability insurance policies formerly held by plaintiff, Frances Xavier Letard, Jr., who is a physician, due to plaintiff's failure to pay the insurance premiums. Defendant General American has moved for summary judgment, stating there are no genuine issues of material fact, and it is entitled to entry of judgment as a matter of law. For the reasons which follow, defendant's motion for summary judgment will be granted, and this action will be dismissed.

## Factual Background

On December 8, 2004, Letard filed suit claiming that General American wrongfully terminated his insurance coverage. In his complaint, Letard acknowledged that General American cancelled the policies when he did not pay the premiums due. Letard,

however, contends that General American consistently mailed him billing statements for the premiums for the policies; that he relied upon the mailing out of premium notices; but that he did not receive a statement for the premium due in February 2004 from General American. Letard claims that General American "surreptitiously caused the cancellation of the policies in such a way as to attempt thwarting the spirit of the contract between the parties . . . any inaction on his part was proximately caused by the inaction, negligence, and/or fault of General American in failing to forward to him the normal insurance premium statement which General American had been doing for many years, and which had become the normal course of conduct between the parties." In his prayer for relief, Letard does not ask the court to award him monetary damages, but seeks only "specific performance" and an order directing the reinstatement of his disability insurance policies.

General American, on the other hand, points out that the policies specifically provide that "the consideration for this insurance is the application . . . and the payment of the required premiums," and that "you may continue this policy until age 65 by paying each premium as it is due." Thus, General American asserts, Letard's privilege of renewing the policy is contingent upon "paying each premium as it is due." The policies additionally state that they "will not be kept in force after the last day of the term for which the premium is paid except as stated in the grace period provision." Regarding the grace period, the policies declare:

> If you do not pay a premium on or before its due date, we will keep this Policy in force and continue coverage for a Grace Period of 31 days beyond that date. If you fail to pay the premium during the Grace Period, this Policy and all coverage will terminate.

It is General American's policy and practice to prepare and send out computer generated invoices to insureds to remind them when payments of disability insurance premiums are due, and to send out computer-generated "list bills" regarding premiums due for more than one policy to insureds such as Letard who have multiple disability insurance policies. General American's address of record for Letard was Plastic Surgery Consultants, Attention Frances Letard Jr., 10265 Kingston Pike Ste C, Knoxville, Tennessee 37922-3277. General American, in the regular course of business, sent list bills to Letard at this address, including a list bill for the premiums due in February 2004.

Under its automated list billing practices and procedures, General American sends out a list bill to an insured approximately 20 days prior to the premium due date. Forty days after the list bill is sent, if payment of the premium has not been received, then General American sends a notice that the grace period is about to expire to the servicing agent for the policies. Thirty-three days after the premium due date, if payment of the premium has not been received, then General American sends a late notice to the insured and to the agent. As demonstrated by General American's backup transaction files, in January 2004, General American generated list bill No. 18421825 for the premiums due on Letard's policies. After the list bill for the policies was generated by computer, the list bill would have been mailed to Letard's address of record. Letard, however, testified that he did not receive the list bill from General American for the premiums due in February 2004.

General American's files reflect that Policy No. 8421825 was issued on January 8, 1987, and lapsed due to nonpayment of premiums on February 8, 2004. On April 14, 2004, General American wrote Letard and advised him that the policy had lapsed because the premium due had not been paid, and that he could apply for reinstatement by completing an application for reinstatement. The letter further advised Letard that after submission of the application for reinstatement, a paramedical exam might be scheduled, and that General American would only consider reinstatement for six months from the date the policy lapsed due to nonpayment. Letard testified that he did not receive General American's April 14, 2004 lapse letter.

Letard's second policy, Policy No. 8424166 was issued on March 1, 1987 and lapsed due to nonpayment of premiums on February 1, 2004. On April 7, 2004, General American wrote plaintiff a letter like the April 14 2004 letter referenced above. Letard, however, testified he did not receive General American's April 7, 2004 lapse letter.

Letard's third policy, Policy No. 8449351 was issued on September 13, 1989, and lapsed due to nonpayment of premiums on February 13, 2004. On April 20, 2004, General American wrote plaintiff a letter similar to the April 7 and 14, 2004 letters referenced above. Again, Letard testified that he did not receive the April 20, 2004 lapse letter.

Regarding reinstatement, the policies provide:

> If this Policy terminates for nonpayment of premiums, you may apply to reinstate it. In no event, however, will we reinstate if the unpaid premium is six or more months overdue. To apply for reinstatement, you must:
>
> 1. Complete a written request for consideration of reinstatement;
>
> 2. Pay all back premiums, and
>
> 3. When requested, furnish evidence of current insurability, satisfactory to us.

General American sent a list bill to Letard in January 2004 and sent three separate letters to Letard in April 2004, regarding the lapse of the policies. Letard states that he did not receive the list bill or any of the letters from General American. Letard admits taking no action to seek reinstatement of the policies until September 2004. On September 14, 2004, Ellen Methvin of General American discussed with Letard that his premiums were more than six months past due. On September 15, 2004, General American wrote Letard and advised him that his policies had lapsed for nonpayment of premiums; that such policies would need to go through reinstatement; that in order to complete the reinstatement process; it needed a completed request for consideration of reinstatement and authorization; and that General American's guidelines required an attending physician's statement and a blood and urine analysis because Letard was over 50 years of age.

On September 17, 2004, Letard completed a request for consideration of reinstatement and named Dr. Bill Robinson as his attending physician. On September 22,

2004, General American wrote Letard and advised him that it was willing to consider reinstatement of the disability policies, but that Underwriting would require an attending physician's statement and would be contacting his doctor. On September 23, 2004, General American ordered copies of Letard's medical records from Dr. Robinson. After receiving Letard's application for reinstatement of the policies and his medical records from Dr. Robinson, General American sent the matter to its underwriters. On October 6, 2004, the underwriters determined that the policies could not be reinstated due to Letard's medical conditions. On October 13, 2004, General American wrote Letard and advised him that it was unable to reinstate his policies due to his medical history as reported by Dr. Robinson.

General American argues it properly terminated Letard's policies due to his failure to pay the required premiums. More than six months after the policies had lapsed, Letard untimely applied for reinstatement of the coverage. General American denied his request based upon its underwriters' directive due to plaintiff's medical history. General American contends that Letard has not demonstrated any basis for the extraordinary remedy of reinstatement of the lapsed policies. Therefore, General American asserts there is no genuine issue of material fact and it is entitled to entry of judgment as a matter of law.

## **Standard of Review**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## **Analysis**

Plaintiff asks the court to reinstate the disability policies because he relied upon a pattern and practice of General American sending him bills, at which time he would remit payment of the premium, but he did not receive a list bill for the premiums due in February 2004. General American, on the other hand, claims that in the ordinary course of business, it generated a list bill to Letard in January 2004, followed by three separate lapse letters to him in February 2004. Letard took no action to reinstate the policies until mid-September 2004, more than six months after each of the policies had lapsed for non-payment of premiums, when he completed a request for reinstatement. Pursuant to the terms of the policies, General American had Letard's medical records reviewed, and its underwriters determined that the policies could not be reinstated due to his medical

conditions. Letard does not challenge this medical determination, thus, the pertinent issue here is whether there is a genuine issue of material fact regarding whether the list bill and lapse letters were sent to Letard.

In Tennessee, the general rules regarding construction and enforcement of contracts apply equally to insurance policies. *Naifeh v. Valley Forge Ins. Co.,* 2005 WL 1073647 at *5 (Tenn.App. May 5, 2005). Tenn. Code Ann. § 56-7-2303 addresses notice of forfeiture or lapse of certain types of insurance policies. Regarding notice of the premium due, the statute provides:

> (b) The affidavit of any responsible officer, clerk, or agent of the insurance company authorized to mail such notice that is the standard practice of the company to duly address and mail to policy owners the notice required by this section shall be prima facie evidence that such notice has been duly given.

Letard argues that General American's list bill and three lapse letters were not mailed to his correct address. The business address for Letard, according to General American's records was "Plastic Surgery Consultants, Attention Frances Letard, Jr., 10265 Kingston Pike, Ste C, Knoxville, Tennessee 37922-3277." However, General American's records show that the lapse letters were addressed to "Frances Xavier Letard, Jr., 10265 Kingston Pike C, Knoxville, Tennessee 37922-3277." Letard's argument that General American mailed the list bill and lapse letters to the wrong address is without merit. Letard testified that he has practiced medicine at 10265 Kingston Pike, Knoxville, Tennessee for the past nine years, including in 2004, when the list bill and lapse letters were sent to him. General American sent the list bill and lapse letters to the correct street address, suite, city,

state and zip code.  General American does not have any record of the list bill or three letters being returned as undeliverable.

Letard further contends that General American cannot prove that he received the correspondence.  Letard proffers no legal authority, and the court has found none, to support his position that an insurer has to prove that an insured actually received a premium notice before the insurer can declare a lapse in coverage based upon the insured's failure to pay the premium.  To the contrary, the applicable authorities focus on the insurer's pattern and practice of generating notices to insureds, and uniformly hold that an insurer may rely upon its regular billing practices and procedures.  *See Federal Kemper Life Assur. Co. v. Ellis,* 28 F.3d 1033 (10th Cir. 1994) (insurer had no duty to be sure that insured actually received notice that premium payment on life insurance policy was due, but rather had duty only to mail notice to insured's address); *Hotaling v. Chubb Sovereign Life Ins. Co.,* 241 F.3d 572 (7th Cir. 2001) (statute required insurer to prove only that a legally sufficient notice was addressed and mailed, not that it was received by policyholder); *Yessick v. Midland Life Ins. Co.,* 178 F.Supp.2d 1301 (N.D.Ga. 2001) (proof of routine, customary computerized procedures is sufficient to show adherence to such procedures).

It was General American's policy and practice to mail out to insureds such as Letard list bills for premiums due 20 days prior to the premium due date, as well as notices 40 days after the list bill was sent, and 33 days after the premium due date.  Letard's denial of receipt of the January 2004 list bill and the three subsequent February 2004 lapse letters

does not create a disputed issue of material fact where General American has presented evidence of its standard billing procedures. Through its computer backup data, General American has demonstrated that in the ordinary course of business, its computers generated and sent a list bill to Letard for the premiums due on his policies in February 2004. General American also established that in the ordinary course of business, its computers generated and sent three lapse letters to Letard in April 2004. Pursuant to Tenn. Code Ann. § 56-7-2303 and the case authorities cited herein, any duty that General American had to Letard was fulfilled by sending these four notices, and General American had no obligation to ensure that Letard actually received them.

Finally, Letard argues that General American "waived" the lapsing of the policies based upon a prior incident occurring six years ago, in which General American reinstated his coverage. General American's files reflect that Letard did not timely pay his premiums in early 1999, at which time General American wrote him, he remitted his premium, and the coverage continued. There is no indication that more than six months ran before Letard remitted the overdue premiums, as occurred in the instant case. Further, the policies at issue provide:

> This Policy, with the application and attached papers, is the entire contract. No change in this policy will be effective until approved by one of our officers. This approval must be noted on or attached to this Policy. No agent or sales representative may change this Policy or waive any of its provisions.

The plain language of the policies state that no waiver of policy provisions can occur unless approved by one of General American's officers. The law does not presume a waiver, and the party asserting it has the burden of proving it. *94th Aero Squadron of Memphis, Inc. v.*

*Memphis-Shelby County Airport Authority*, 169 S.W.3d 627, 635 n.3 (Tenn.App. 2004). General American never indicated that it was releasing or waiving its rights under the policies by allowing Letard to apply for reinstatement. Nor does the reinstatement of Letard's policies in 1999, pursuant to the terms of those polices, constitute a future waiver of the policies' provisions. Accordingly, the court finds there is no genuine issue of material fact in this case, and General American is entitled to entry of judgment as a matter of law.

## **Conclusion**

For the reasons stated above, the court finds that defendant General American Life Insurance Company is entitled to judgment as a matter of law on plaintiff's complaint to reinstate the three disability insurance policies cancelled by General American. Accordingly, defendant's motion for summary judgment [Doc. 25] will be granted, and this action will be dismissed.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge